FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 15, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARIE J.[1],

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

No. 4:18-CV-5183-EFS

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SUMMARY JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY JUDGMENT MOTION**

Before the Court are the parties' cross motions for summary judgment. ECF Nos. 13 & 14. Plaintiff Marie J. appeals a denial of benefits by the Administrative Law Judge (ALJ).[2] She alleges the ALJ erred by 1) finding no severe impairments before Plaintiffs' date last insured; and 2) improperly rejecting the opinion of medical

---

[1] To protect the privacy of the social-security plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] *See generally* ECF No. 13.

ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 1

expert Jack Lebeau, M.D.[3] In contrast, the Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled.[4] After reviewing the record and relevant authority, the Court grants in part and denies in part Plaintiff's Motion for Summary Judgment, ECF No. 13; denies Defendant's Motion for Summary Judgment, ECF No. 14; and remands for further proceedings.

### I. Factual and Procedural Summary

Plaintiff protectively filed a Title II application and a Title XVI application on October 6, 2014, alleging a disability onset date of July 31, 2013.[5] Plaintiff meets the insured status requirements through June 30, 2014.[6] Her claim was denied initially and upon reconsideration.[7] An administrative hearing was held on September 22, 2017, before Administrative Law Judge Mark Kim.[8]

In denying Plaintiff's disability claims, the ALJ made the following findings:

---

[3] *Id.*

[4] ECF No. 14.

[5] AR 227, 234.

[6] AR 17.

[7] AR 1-3.

[8] AR 43-79.

- Step one: Plaintiff had not engaged in substantial gainful activity since July 31, 2014, the alleged onset date.[9]
- Step two: Plaintiff had no severe impairments before her date last insured of June 30, 2014.[10] However, the ALJ concluded that Plaintiff had the following medically determinable severe impairments from the date Plaintiff applied for supplemental security income, October 6, 2014, through the date of his decision: degenerative disc disease of the lumbar spine, cervicalgia, obesity, chronic pain syndrome, depressive disorder, anxiety disorder, and an unspecified trauma-related disorder.[11]
- Step three: Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.[12]
- Step four: Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except Plaintiff "could never crawl or climb ladders or scaffolds;" "could occasionally stoop, kneel, crouch, and climb ramps or stairs"; "should avoid all exposure to

---

[9] AR 17.

[10] AR 17.

[11] AR 18.

[12] AR 18-19.

- unprotected heights;" "be limited to simple, routine tasks requiring no more than a GED level 3;" "would require a low-stress environment (i.e., only occasional job-related decision-making and changes in the work setting);" and "could have only occasional interaction with the public."[13]
- Step five: Plaintiff is incapable of performing past relevant work as a home attendant.[14] However, considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in significant numbers in the national economy, such as a housekeeper/cleaner, café attendant, and bottling line attendant.[15]

When assessing the medical opinion evidence, the ALJ gave:

- great weight to the opinion of Jack Lebeau, M.D., the testifying reviewing medical expert;[16]
- partial weight to the opinions of Leslie Arnold, M.D., reviewing medical evaluator for the state agency;[17] Shirley Shen, Ph.D., independent

---

[13] AR 23.

[14] AR 24.

[15] AR 31.

[16] AR 27.

[17] *Id*.

ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 4

consultative evaluator[18]; and John Wolfe, Ph.D., and Bruce Eather, Ph.D., medical evaluators for the state agency;[19] and

- little weight to the opinions of Jeffrey Kiki, D.O., Plaintiff's treating physician;[20] Katherine Wells, treating physical therapist; Steven Johansen, Ph.D., medical evaluator at DSHS;[21] and Kris Marks, Ph.D., consultative evaluator.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

---

[18] *Id.*

[19] AR 30

[20] AR 25.

[21] AR 29.

[22] AR 28.

[23] AR 24.

Plaintiff requested review of the ALJ's decision by the Appeals Council.[24] The Appeals Council denied review.[25] Plaintiff timely appealed to this Court.[26]

## II. Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[27] Step one assesses whether the claimant is currently engaged in a substantial gainful activity.[28] If the claimant is, benefits are denied.[29] If not, the disability-evaluation proceeds to step two.[30]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limit the claimant's physical or

---

[24] AR 224-226

[25] AR 1-3.

[26] ECF No. 13.

[27] *See* 20 C.F.R. §§ 404.1520, 416.920.

[28] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[29] 20 C.F.R. §§ 404.1520(b), 416.920(b).

[30] *See id.*

mental ability to do basic work activities.[31] If the claimant does not, benefits are denied.[32] If the claimant does, the disability-evaluation proceeds to step three.[33]

Step three compares the claimant's impairment to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[34] If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[35] If the impairment does not, the disability-evaluation proceeds to step four.[36]

Step four assesses whether the impairment prevents the claimant from performing work she performed in the past by determining the claimant's RFC.[37] If

---

[31] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[32] 20 C.F.R. §§ 404.1520(c), 416.920(c).

[33] *See id.*

[34] 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). *See* 404 Subpt. P App. 1.

[35] 20 C.F.R. §§ 404.1520(d), 416.920(d).

[36] 20 C.F.R. §§ 404.1520(e), 416.920(e).

[37] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

the claimant is able to perform her previous work, benefits are denied.[38] If the claimant cannot perform this work, the disability-evaluation proceeds to step five.[39]

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—in light of her age, education, and work experience.[40] If so, benefits are denied. If not, the claim is granted.[41]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[42] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[43]

### III. Standard of Review

---

[38] *Id.*

[39] *See id.*

[40] 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (1984).

[41] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[42] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[43] *Id.*

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited. The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[44] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[45] Because it is the role of the ALJ and not the Court to weigh conflicting evidence and make credibility assessments, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[46]

Further, the Court "may not reverse an ALJ's decision on account of an error that is harmless."[47] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[48] The party appealing the ALJ's decision generally bears the burden of establishing harm.[49]

---

[44] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[45] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[46] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[47] *Id.*

[48] *Id.* at 1115 (quotation and citation omitted).

[49] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Applicable Law and Analysis

**A. The ALJ did not err in finding no severe impairment before the date last insured.**

Plaintiff argues the ALJ erred at step two by failing to consider medical evidence generated after the date last insured. At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[50] To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.[51]

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[52] Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing,

---

[50] 20 C.F.R. §§ 404.1520(c); 416.920(c).

[51] 20 C.F.R. §§ 404.1521, 416.912.

[52] Social Security Ruling (SSR) 85-28.

hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.[53]

Step two is "a de minimus screening device to dispose of groundless claims."[54] "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."[55]

Substantial evidence supports the ALJ's decision that Plaintiff had no severe impairments before her last date insured of June 30, 2014. The ALJ found evidence of only one medical record dated before June 30, 2014 – a chiropractic examination form from October 2012. The ALJ determined that the chiropractor was not an acceptable medical source under the Social Security Act, and that his opinion could not substantiate a medically determinable impairment.[56] The ALJ explained that even if the chiropractor opinion substantiated a medically determinable impairment,

---

[53] 20 C.F.R. § 416.922; SSR 85-28.

[54] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[55] *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

[56] AR 17.

the chiropractor believed the impairment would not endure, thus the impairment was not a severe impairment.[57]

Plaintiff argues that the ALJ needed to consider medical evidence generated after the date last insured.[58] Specifically, Plaintiff points to treatment records that reference Plaintiff's complaints of back pain and a gunshot wound Plaintiff suffered.[59] None of the medical evidence in the record includes "medically acceptable clinical and laboratory diagnostic techniques" that show an impairment, rather, duly statements from the Plaintiff attesting to her back pain.[60] Plaintiff's own statements of her symptoms alone do not suffice to show a severe impairment.[61] Thus, the ALJ's finding that Plaintiff had no severe impairments prior to her date of last insured is supported by substantial evidence.

**B.      The ALJ erred when he did not provide a valid reason to discount portions of Dr. LeBeau's opinion.**

---

[57] AR 18.

[58] ECF No. 13 at 6.

[59] ECF No. 13 at 7-8.

[60] 20 C.F.R. §§ 416.912, 404.1521.

[61] *Id.*

Plaintiff contends the ALJ erroneously failed to address parts of medical expert Dr. Lebeau's opinion. [62] Dr. Lebeau opined that Plaintiff could: lift ten pounds continuously, twenty pounds frequently, and on rare occasions up to fifty pounds; sit for two-hours with normal breaks for a total of six hours a day, stand for one hour for a total of four hours a day, and walk for thirty minutes for a total of two hours a day; have no restrictions on the use of her hands; occasionally climb stairs and ramps, but not climb ladders and scaffolds; occasionally stoop, kneel, crouch, and crawl; not be exposed to unprotected heights, and have no exposure to sounds other than heavy traffic without ear protection.[63] The ALJ assigned "significant weight" to Dr. Lebeau's opinion because he had an opportunity to review all of the medical evidence in the record, specialized in the relevant area of internal medicine, was familiar with Social Security regulations, and his opinion was generally consistent with the evidence reviewed.[64]

As a general rule, the ALJ "need not discuss all evidence presented to [him]," but "[he] must explain why significant probative evidence has been rejected."[65] When

---

[62] ECF No. 13 at 10-12.

[63] AR 59-60.

[64] AR 27.

[65] *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal quotation marks omitted)..

the ALJ accepts portions of a medical opinion, but rejects other portions, he must provide an explanation for the variable treatment.[66]. An "ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boiler plate language that fails to offer a substantive basis for his conclusion."[67]

Plaintiff argues that the ALJ improperly failed to consider the portions of Dr. Lebeau's opinion that Plaintiff could stand for an hour, four times a day, and walk in half hour increments for a total of two hours a day.[68]

After Dr. Lebeau testified, the ALJ gave the following hypothetical to Frank Cutler, vocational expert (VE):

> [A]ssume an individual that can perform a full range of light work as defined by the regulations, except for the following. This person can never climb ladders or scaffolds. And never crawl. The person can occasionally climb ramps and stairs; occasionally stoop, knee[l] and crouch. This person should avoid all exposure to unprotected

---

[66] *Craig v. Asture*, 269 F. App'x 710, 712 (9th Cir. 2008) (rejecting the ALJ's credibility determination in part because "the ALJ offered no reason why [the medical] opinion was persuasive in one regard, but not the other" (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)).

[67] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

[68] ECF No. 13 at 10-12; AR 59.

heights. The person's work is limited to simple, routine tasks, and I
defined that as GED, Level 3 at most . . . . The person would be
working in a low stress environment, defined as only occasional job-
related decision-making. Only occasional changes in the work
setting. And with only occasional interaction with the public.[69]

Based on this hypothetical, the VE found that there are jobs, that an individual with the same age, educational, and work experience as Plaintiff could perform.[70] Based on the VE's testimony, the ALJ concluded jobs existed that the Plaintiff could perform, such as housekeeper/cleaner, café attendant, or bottling line attendant.[71] At no point, did the ALJ explain why Dr. Lebeau's opinion on Plaintiff's need to limit standing to an hour at a time and walking to a half-hour at a time was not included in the hypothetical given to the VE or within the ALJ's decision that there are jobs Plaintiff could perform.

Dr. Lebeau's statement limiting Plaintiff's standing to one hour at a time and walking to half-hour at a time, in combination with the VE's testimony, was significant probative evidence related to Plaintiff's ability to maintain employment. After deciding to give significant weight to Dr. Lebeau's opinion, the ALJ was required to provide a reason for not including Dr. Lebeau's testimony related to Plaintiff's need to limit her standing to one hour at a time and walking to a half-hour

---

[69] AR 73-74.

[70] AR 74.

[71] AR 31.

at a time.[72] Without refuting – or at least acknowledging – Dr. Lebeau's statement as to Plaintiff's need to limit her standing and walking to the opined intervals and presenting the VE with this limitation, there was no substantial evidence for the ALJ to reasonably conclude that Plaintiff was able to maintain the identified employment. On this record, it is unclear whether the identified jobs (housekeeper/cleaner, café attendant, and bottling line attendant) are consistent with Dr. Lebeau's opinion that Plaintiff must stand for only one hour at a time and walk for half-hour at a time during the light-duty workday.

The Court remands the case back to the ALJ to make specific findings about whether Plaintiff's ability to stand and walk is more limited than as set forth in the current RFC, and, if so, whether there are jobs that exist that Plaintiff can perform.

## V. Conclusion

Accordingly, IT IS HEREBY ORDERED:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED IN PART and DENIED IN PART**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** for Plaintiff.

---

[72] AR 27.

**4.** This matter is **REMANDED** to the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**5.** The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 15th day of October 2019.

s/Edward F. Shea<br>
EDWARD F. SHEA<br>
Senior United States District Judge

ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 17